DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**FALLON JOHNSON,**
Appellant,

v.

**JACOREY JOHNSON,**
Appellee.

No. 4D20-504

[March 24, 2021]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Karen M. Miller, Judge; L.T. Case No. 50-2018-DR-003248-XXXX-NB.

Lisa Paige Glass of Glass Law Office, P.A., Boca Raton, for appellant.

James L. Green of Law Office of James L. Green, P.A., Jupiter, for appellee.

CONNER, J.

Fallon Johnson ("Former Wife") appeals the trial court's final judgment dissolving her marriage to Jacorey Johnson ("Former Husband"). Although Former Wife raises numerous issues on appeal, we find merit in only two of her arguments, namely that the trial court erred in designating the child's school boundary determination and the child support calculation. We reverse as to those two issues, as discussed below, and affirm the remaining issues without discussion.

*Background*

Prior to the petition for dissolution of marriage, the parties resided in their home in Palm Beach County with their minor child. Eventually, Former Husband moved to St. Lucie County. Upon filing for divorce, Former Wife's petition requested the trial court order a parenting plan for the minor child if she and Former Husband were unable to agree to one, but made no other specific request as to timesharing.

Later, Former Husband filed a motion for temporary relief requesting equal timesharing with Former Wife. In response, the trial court ordered the parties to follow a model parental timesharing schedule, giving Former Husband timesharing with the minor child every other weekend beginning on Friday. Pursuant to the child support guidelines worksheet, the trial court also ordered Former Husband to pay temporary child support of $447.26 a month, which was the net remaining after Former Husband paid the childcare expenses of $600 a month.

Eventually, Former Wife and the child moved out of the marital home and into her sister's home in Broward County. Upon learning Former Wife had moved the child to Broward County, Former Husband filed an emergency motion to have the child returned to Palm Beach County, where Former Husband once again resided. He alleged that Former Wife lacked permission to move the child and that she had no need to relocate other than to deprive him of time with the child. Determining the motion did not constitute an emergency, the trial court denied the motion without prejudice to pursue the matter on a nonemergency basis. Former Husband never refiled the motion.

At trial, Former Husband's financial affidavit was entered into evidence, which reflected: (1) his salary; (2) he does not *actually* pay child support for any other children; (3) he pays $49 in union dues each month; and (4) his monthly health insurance payments, including dental and excluding any portion paid for any minor children outside of the relationship, was $176 per month. Upon testifying, Former Husband: (1) provided an estimate as to his salary, seemingly consistent with the affidavit; (2) did not provide any testimony as to whether he actually pays child support for any children; (3) did not testify as to his union dues; and (4) stated that his health insurance plan is a one-cost plan that covers five people, including other adults.

Former Wife testified that despite the temporary child support order, she paid all the childcare costs for the year preceding trial. For that reason, she requested that she be given credit for these expenses that Former Husband was supposed to pay. Former Husband admitted that he stopped paying for childcare when the child moved to Broward County.

As to timesharing, Former Wife requested that the prior court-ordered arrangement continue. At the time of trial, Former Wife was still living in Broward County. In support of her request, Former Wife explained that the move to Broward County was necessary because the marital residence was in foreclosure and made uninhabitable because the bills were not paid, and that she was unable to secure other housing in Palm Beach

2

County based on her income. On the other hand, in Broward County, the child and Former Wife were able to secure housing. Following the move, the child had to change physicians and preschools, and while in Broward County, the child became school-aged and started elementary school where he made friends and played sports.

However, Former Husband requested approximately ten nights per month in accordance with a different model schedule than the trial court used in the order for temporary relief.

At the conclusion of closing arguments, the trial court made no oral finding or announcement of rulings, even when politely requested by Former Wife's counsel. Instead, the trial court asked the attorneys to submit proposed final judgments with findings. Notably, at one point during the trial, the trial court made an explicit observation that Former Wife never sought temporary relief concerning timesharing, only seeking temporary financial support.

In the final judgment, the trial court made findings pursuant to section 61.13, Florida Statutes (2019), regarding factors to consider for timesharing. Significantly, the trial court found it was in the child's best interest to remain a resident of and attend school in Palm Beach County. Hence, the trial court ordered the child's return to Palm Beach County within ten days. As to timesharing, the trial court provided the parties with two options, depending on whether Former Wife chose to move back to Palm Beach County. The options were embodied in two exhibits attached to the final judgment, setting a time sharing schedule revolving around the concepts of "primary residential parent" and "secondary residential parent": (a) Former Wife could move back to Palm Beach County with the child, making her the primary residential parent and giving Former Husband time with the child every Thursday afternoon to Friday morning and every other weekend starting Thursday afternoon; or (b) Former Wife could remain in Broward County and Former Husband would be the primary residential parent, giving Former Wife time with the child every other weekend starting Friday afternoon. The trial court also noted in the findings that no testimony was provided regarding the child's community or school record.

Regarding the child's education, the trial court designated Former Husband's address for purposes of the school boundary determination, if the parties could not agree otherwise.

As to child support, the trial court ordered that Former Wife was entitled to $453 per month if she relocated back to Palm Beach County,

but, otherwise, Former Wife had to pay Former Husband $150.65 per month—the adjusted amount for the $200 a month she would prepay for childcare. The trial court also listed Former Husband's net monthly income with a deduction of $400 a month for child support for previous relationships and $75 a month for union dues. Regarding health insurance, the child support guidelines worksheet indicated that Former Husband paid $110 in total monthly children's health insurance costs, but the child support guidelines income attachment indicated that he paid $110 for health insurance costs "not for children per month."[1]

Former Wife gave notice of appeal.

*Appellate Analysis*

School Boundary Determination

A trial court's decision regarding school designation is reviewed for abuse of discretion. *Bruce v. Bruce*, 243 So. 3d 461, 464 (Fla. 5th DCA 2018) (citing *Schwieterman v. Schwieterman*, 114 So. 3d 984, 987 (Fla. 5th DCA 2012)). "An appellate court will not disturb the trial court's custody decision unless there is no substantial, competent evidence to support the decision." *Winters v. Brown*, 51 So. 3d 656, 658 (Fla. 4th DCA 2011).

Former Wife argues that the trial court erred in designating Former Husband's address for the child's school boundary determination because it was unclear which parent would be the primary residential parent. Former Husband argues that the trial court properly designated his address because the trial court determined that it was in the child's best interest to live in Palm Beach County and there was no other Palm Beach County address to use.

> Section 61.13(2)(b)3., Florida Statutes (2015), requires a parenting plan to contain a designation of residence for school attendance. The determination must be made based on "the best interests of the child." *Schwieterman*, 114 So. 3d at 987 (citing 61.13(3), Fla. Stat. (2010)). The determination of the

---

[1] Attached to the final judgment was a schedule of health insurance plans offered to Former Husband through his employer. Based on the information provided before and during trial, it appears that Former Husband took his employer's "Network Plan" which offered a single employee insurance for $37.47, an employee + 1 for $120.89, and an employee + 2 or more for $175.98.

best interests of the child is made by evaluating more than twenty factors affecting the welfare and interests of the child. § 61.13(3), Fla. Stat. (2015). While the trial court is not required to address each factor independently, it must, at a minimum, find that its timesharing determination and school designation is in the best interests of the child. *Neville v. McKibben*, 277 So. 3d 1270, 1273 (Fla. 1st DCA 2017). This finding must either be stated on the record or set out in the order. *Clark v. Clark*, 825 So. 2d 1016, 1017 (Fla. 1st DCA 2002).

*Bruce*, 243 So. 3d at 464.

Although Former Wife argues that the trial court was penalizing her for moving the child, since the trial court found that it was in the child's best interest to live in Palm Beach County, the trial court logically had to designate a Palm Beach County address for the child's school assignment. *See id.* Accordingly, there was competent substantial evidence on the record to support this designation.

The trial court, however, should have provided a contingent designation in the event that Former Wife opted to move back to Palm Beach County as the final judgment provided for, or simply stated that school designation will be based on where the child primarily resides. As Former Wife argues, school boards set policies as to where a child attends school based on residential address. In particular, Palm Beach County mandates that a student attend school where the student lives for the majority of the time. Palm Beach County School Board Code No. 5.011 (2018). As a result, if Former Wife moves to Palm Beach County, she would be forced to violate either the final judgment or the Palm Beach County School Board Code because the child would spend most overnights with her but either: (1) the child would go to a school designated for Former Husband's address in violation of the code or (2) Former Wife could enroll the child in school near her home but violate the final judgment. This is assuming that Former Wife's Palm Beach County residence would not be within the same school zone as Former Husband's address.

While the trial court based timesharing on the child's best interests, other factors are allowed to be included in determining the parenting plan, and Former Wife's inability to comply with the law in the above scenarios should be taken into consideration. *See* § 61.13(3)(t), Fla. Stat. (2018) (stating that the trial court should consider "[a]ny other factor that is relevant to the determination of a specific parenting plan, including the time-sharing schedule"). Accordingly, the trial court abused its discretion

5

in mandating that Former Husband's address be used for the child's school boundary determination. On remand, the trial court should modify the final judgment so that the parents do not violate school board policies.[2]

Child Support Calculation

"The standard of review for a child support award is abuse of discretion." *Smith v. Loffredo-Smith*, 230 So. 3d 898, 899 (Fla. 4th DCA 2017). Furthermore, "a trial court's decisions about support must be supported by competent substantial evidence and factual findings sufficient to enable this court to determine how the trial court made the decisions it did." *Lennon v. Lennon*, 264 So. 3d 1084, 1085 (Fla. 2d DCA 2019). However, "[w]hether a trial court's mathematical computations are correct is a question of law which is reviewed *de novo*." *Kareff v. Kareff*, 943 So. 2d 890, 892 (Fla. 4th DCA 2006).

Former Wife argues that the child support award was based on an incorrect determination of Former Husband's gross and net income, and that the trial court did not properly account for Former Husband's failure to pay the child's daycare expenses for the year preceding trial. Former Husband does not specifically respond to the individual arguments listed below but generally counters that both parties presented their respective financial information to the trial court which was used in the child support determination.

First, to the extent Former Wife argues that Former Husband's income may have increased after his financial affidavit was submitted, there is no evidence on the record to support that argument. At trial, Former Husband testified roughly as to the gross amount of his salary, a rounded-up amount different from the exact amount stated in his financial affidavit. Therefore, the gross income the trial court based the child support award on was sufficiently accurate.

---

[2] We recognize that when the final judgment was issued, Former Wife did not actually live in Palm Beach County and that the trial court's order was based on the current arrangement with Former Husband as the primary residential parent. However, the trial court specifically ordered the possibility of Former Wife becoming the primary residential parent, and it was appropriate for the trial court to adjust the school boundary determination based on this possibility. *See Rivera v. Purtell*, 252 So. 3d 283, 286 (Fla. 5th DCA 2018) ("[W]hen crafting a timesharing plan, a trial court *must* be free to account for reasonably and objectively certain future events.").

Second, Former Wife argues that the trial court erred when it deducted $400 per month from Former Husband's income for court-ordered child support for a child from another relationship.

When calculating child support, the trial court deducts "[c]ourt-ordered support for other children *which is actually paid*" to determine the parent's net income. § 61.30(3)(f), Fla. Stat. (2019) (emphasis added). Where there is evidence that the parent has not been paying ordered child support, it should not be deducted from the parent's income. *See, e.g., Dep't of Rev. ex rel. T.L.S. v. S.J.W.*, 113 So. 3d 85, 87 (Fla. 2d DCA 2013) (holding that child support should not have been deducted from father's income where there was evidence that he did not actually pay child support).

Here, there is nothing in the record indicating Former Husband paid child support for any other children. As such, the trial court erred in making the deduction. *Cf. Sierra v. Ellison*, 677 So. 2d 406, 407 (Fla. 3d DCA 1996) (explaining that where the record reflects that the parent is "actually paying court-ordered child support" for prior children, that amount should be deducted from the gross income).

Third, Former Wife correctly argues that the trial court erred by factoring in Former Husband's union dues as $75 per month where his affidavit listed the expense as $49 per month. *See* § 61.30(3)(c), Fla. Stat. (2019) (listing "[m]andatory union dues" as an allowable deduction to determine the parent's net income). Therefore, according to Former Husband's affidavit, the trial court erred in deducting an additional $26 from Former Husband's gross income.

Fourth, Former Wife correctly argues that the trial court erred by factoring in Former Husband's "health insurance cost not for children" at $110 per month, asserting it should have been $37.47 per month. *See* § 61.30(3)(e), Fla. Stat. (2019) (listing "[h]ealth insurance payments, excluding payments for coverage of the minor child" as an allowable deduction to determine the parent's net income).

Here, the child support guidelines worksheet and the child support guidelines income attachment do not align with the record evidence. The former reflects that Former Husband paid $110 per month in health insurance costs for children, while the latter reflects that he paid $110 per month for himself. However, none of the employee-only healthcare plans provided in the record cost $110 per month. Rather, the employee-only monthly rate was $37.47, not $110. Accordingly, the health care deduction for Former Husband himself was $72.53 higher than it should have been.

Finally, Former Wife argues that since Former Husband failed to pay the child's daycare expenses for the year preceding trial, the trial court should have off-set her child support obligations or given her a lump sum award.

Section 61.30(7), Florida Statutes (2019), states that

> Child care costs incurred due to employment, job search, or education calculated to result in employment or to enhance income of current employment of either parent shall be added to the basic obligation. *After the child care costs are added, any moneys prepaid by a parent for child care costs for the child or children of this action shall be deducted from that parent's child support obligation for that child or those children.* Child care costs may not exceed the level required to provide quality care from a licensed source.

§ 61.30(7), Fla. Stat. (2019) (emphasis added).

Since Former Husband testified that he did not pay for childcare once Former Wife and the child moved to Broward County, the $600 per month reduction in his child support payments was based on an expense he was not incurring. Instead, Former Wife incurred expenses that should have been prepaid by Former Husband and the trial court erred in not taking this into account in the child support obligations. On remand, the trial court should adjust the amount of child support owed to or by Former Wife to account for the childcare costs Former Husband should have paid as temporary support that was actually paid by Former Wife. *See Knudson v. Drobnak*, 149 So. 3d 114, 114–15 (Fla. 4th DCA 2014) (finding that arrearages for childcare expenses should be reduced by the period of time the mother did not incur childcare expenses).

*Conclusion*

For these reasons, we reverse the portions of the final judgment designating Former Husband's address for the child's school boundary determination and the child support calculation. On remand, the trial court shall modify the school boundary determination to account for the possibility of Former Wife moving back to Palm Beach County and recalculate the parties' child support obligations in keeping with the record. The trial court is permitted to take additional evidence as may be needed to enter amendments to the final judgment in compliance with this opinion.

*Affirmed in part, reversed in part, and remanded with instructions.*

CIKLIN and KLINGENSMITH, JJ., concur.

\*     \*     \*

**Not final until disposition of timely filed motion for rehearing.**